477 F.2d 593
 83 L.R.R.M. (BNA) 2209, 71 Lab.Cas. P 13,670
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
J. Albert Mangum et al., Appellants
v.
A-1 Painting Contractors, Appellee.
 No. 72-1970.
 United States Court of Appeals, Fourth Circuit.
 May 16, 1973.
 
 Before HAYNSWORTH, Chief Judge, RUSSELL and WIDENER, Circuit Judges.
 
 
 1
 WIDENER, C.J.
 
 
 2
 Plaintiff-Appellants Mangum and Bell instituted this action on May 14, 1971 by filing their complaint in the United States District Court for the Eastern District of Virginia. They are respectively the Chairman and Trustee and Administrator of the Painters' Trust Fund of Washington, D.C., and Vicinity. Defendant-Appellee, A-1 Painting Contractors, is a corporation doing business in Maryland, Virginia, and the District of Columbia as a painting contractor. Plaintiffs sued to secure contributions from defendant (hereinafter the employer) to a certain trust fund which had been established pursuant to the collective bargaining agreement entered into by the employer and the Painters and Glaziers District Council No. 51 of the Brotherhood of Painters, Decorators and Paperhangers of America (hereinafter the union).
 
 
 3
 The complaint alleged that the district court had jurisdiction of the action under 28 U.S.C. 1331, 1332 and 28 U.S.C. 185, 186. We are of opinion jurisdiction is properly invoked under 29 U.S.C. 185 which gives the district courts jurisdiction in "suits for violation of contracts between an employer and a labor organization...." See Sinclair Refining Company v. Atkinson, 370 U.S. 195, 196 (1962).
 
 
 4
 The issue in this case is whether the employer was obligated to pay certain amounts into the Painters' Trust Fund on behalf of "temporary employees."[1] The employer's duty to make such payments is alleged to arise from the collective bargaining agreement between the union and the company and a trust agreement which was entered into to carry out the collective bargaining agreement.
 
 
 5
 Article I of the collective bargaining agreement, concerning recognition of the union, "recognizes the Union as the sole and exclusive bargaining agency for all of the Contractors' journeymen and apprentice painters." Nothing in the agreement is found to broaden the representation of the union.
 
 
 6
 Article X of the collective bargaining agreement provides that the parties to the agreement will maintain a trust fund, the purpose of which is to provide life insurance and medical and other similar benefits for "all journeymen and apprentices represented by" the union. Article X obligates the employer to contribute to the trust fund for "Life Insurance, Sick Benefits, Hospitalization, Medical Fees, and Accident and Surgical and Dismemberment Benefits" twenty-four cents for each hour worked by "each journeyman and apprentice."
 
 
 7
 Article XI of the agreement obligates the employer to contribute to the Painters' Pension Fund fifteen cents for each hour worked by "any employee covered by this Agreement" for the purpose of maintaining a "pension fund." Article XIII, Sec. 6, of the agreement recites the total of these and other such contributions as follows:
 
 
 8
 "Sec. 6. The Contractor agrees to contribute a total of forty-two cents (42 cents) an hour for each employee covered by this Agreement to the Administrator of the Painters' Trust Fund, computed as follows:
 
 
 9
 a. Health and Welfare Fund--twenty-four cents an hour (24 cents), as provided by Article X.
 
 
 10
 b. Pension Fund--fifteen cents an hour (15 cents), as provided by Article XI.
 
 
 11
 c. Joint Trade Board--one cent per hour (1 cent).
 
 
 12
 d. Apprentice Fund--two cents per hour (2 cents). In addition one cent per hour (1 cent) shall be deducted from the pay of employees pursuant to Article VIII, Sec. 1, Schooling."
 
 
 13
 The employer does not challenge his duty to make the above contributions generally. It does, however, say that it is under no duty to make such contributions on behalf of temporary employees.
 
 
 14
 The term "temporary employee" is taken from Article III of the collective bargaining agreement which sets up a referral system providing a method for supplying painters to the contractor. Article III states that the union shall constitute "the sole and exclusive source of referrals of applicants for employment." When a contractor needs painters, he must first turn to the union's labor pool.[2] If the union is unable to refer applicants within 48 hours of the contractor's request, then the contractor may go out on his own and hire painters without regard to the union referral system. However, the agreement provides "but such applicants, if hired, shall have the status of 'temporary employees'," and as soon as the union can provide an acceptable applicant through the referral system, the contractor must replace the temporary employee with a union referred applicant.
 
 
 15
 Because the employer was engaged in work on United States government construction projects during the period in question in this case, it was required, under the Davis-Bacon Act, to pay all temporary employees at least the basic hourly wage plus any contributions regularly made to the trustees of the Painters' Trust Fund. 40 USC 276a(b). The Davis-Bacon Act does not say whether amounts equal to trust fund contributions must be paid directly to the employee or to the trust fund. It is not disputed by either party that the employer must pay such either to, or for the account of, all employees if he pays it to any of them.[3] The employer in this case paid such amounts directly to the temporary employees. The union says that the employer was obligated to pay such amounts on behalf of the temporary employees to the trust fund--not to the temporary employee personally. If the union prevails, the employer will have to pay twice, that is, what he has already paid to temporary employees directly and the same amount to the trust fund on their behalf.
 
 
 16
 We are of opinion that the language of the collective bargaining agreement in this case does not require the employer to pay into the trust fund on behalf of temporary employees. The language of the agreement refers to "journeymen" and "apprentices" or "employees covered by this agreement," throughout. The only mention of temporary employees is contained in the referral system provisions which clearly establish a separate class of employee which is not mentioned anywhere else in the collective bargaining agreement[4] and not mentioned at all in the trust agreement. Article X, Sec. 1, of the collective bargaining agreement states: "The purpose of this [trust] fund is to provide ... [benefits] ... for all journeymen and apprentices represented by the ... [union.] There is no mention of temporary employees. Likewise, Sec. 2 of Article X states that the contractor "agrees to contribute an amount equal to twenty-four cents (24 cents) per each hours worked ... by each journeyman and apprentice ..." No mention is made of temporary employees. The trust fund agreement, entered into pursuant to Article X of the collective bargaining agreement, likewise, makes no mention of temporary employees. The trust agreement, in its third recital paragraph before Article I, recites, "WHEREAS, under Article X of said collective bargaining agreement the CONTRACTOR has agreed to the establishment of a Fund, hereinafter called the Painters' Trust Fund, and to contribute into said Fund at the rate of ten (10) cents [now apparently 24 cents] per hour for each hour worked by each journeyman and apprentice ..." [Emphasis added.]
 
 
 17
 The only language in the trust agreement which may lend any support to appellants' argument appears in Article II, Sec. 1, which recites the purpose of the trust estate, and reads in part, as follows: "... for the benefit of (a) employees of the Contractor...."[5] Of course, "employees" could include temporary employees; however, it is clear from the initial paragraphs of the trust agreement and other references to the collective bargaining agreement that the trust agreement was not intended to broaden the employer's duty to contribute beyond that obligation as set forth in the collective bargaining agreement. We are reinforced in this holding by the fact that appellants were unable to produce any substantial evidence that any temporary employee had either applied for or received benefits from any of the trust fund benefit plans. The district court urged the trustees to produce such evidence and allowed extensions of time for that purpose. If the trustees of the trust fund had historically treated temporary employees as eligible, and if temporary employees had in fact applied for and received benefits, tangible proof of such facts would be easy to obtain. Appellants, however, were able to produce only two affidavits. One of the affidavits was by a trust fund trustee containing the declaration that every employer should, not does, contribute from the first day of employment and that "we have paid claims for employees who have moved from employer to employer because they were eligible under the foregoing rules even though they may have been considered temporary employees at the time they filed the said claim ..." This last reasoning is incorrect on its face. Eligibility to receive benefits, according to plaintiffs' affidavit, is in no way conditioned on how often the employee changes employment. This affidavit was executed after the district court requested names of temporary employees who had received benefits on account of the trust fund provisions. An additional affidavit, by Phyllis Denham, an administrator of the trust fund, was filed by appellants. It had been executed before the request by the district court but was filed later. This affidavit states that audits of eleven companies were ordered and that three of such audits were reviewed by the affiant. The affiant states that the audit states that nine employees filed claims and were paid. The affidavit does not reveal whether the persons paid were temporary employees. They are described in the affidavit as "either temporary employees or laborers." To that extent, the affidavit is of lesser value. The last paragraph of the affidavit states that the trust fund records reflect that temporary employees filed claims and were paid. Yet, no such records were ever produced, even though the district court requested proof of payment and granted extensions of time for that purpose. We do not think that the Denham affidavit which is hearsay upon hearsay, and was objected to on that ground, constitutes evidence to rebut what we think is a clear manifestation from the collective bargaining agreement and the trust agreement that temporary employees are not included in the trust fund plan.
 
 
 18
 We find further support for our conclusion in the trust fund eligibility requirements which were recited in the trustees' affidavit. An employee is eligible for participation only on the first day of the second calendar month immediately following the calendar quarter (3 months) in which he works an aggregate of 300 or more hours for one or more employers or immediately following two consecutive calendar quarters (6 months) in which he works an aggregate of 600 or more hours for one or more employers. Such eligibility requirements are inconsistent with the concept of temporary employee as set out in Article III of the collective bargaining agreement.[6]
 
 
 19
 We are, thus, of opinion, because there is no promise to pay, on the part of the employer, into the Painters' Trust Fund, for such Trust Fund, Pension Fund, Apprentice Fund, or Joint Trade Board, on account of temporary employees, the district court properly refused to require the employer to contribute to the trust fund on their behalf.
 
 
 20
 Having reached the merits of the appeal in our decision, we find it unnecessary to rule on appellee's renewed motion to dismiss the appeal, which very well may have been well taken. FMC v. Knolls Electric, Inc., 438 F. (2d) 1220 (4th Cir.1971).
 
 
 21
 The judgment of the district court is accordingly
 
 
 22
 Affirmed.
 
 
 
 [1]
 As stated by plaintiffs' attorney in argument to the district court, the single issue "is just a question of contract language of temporary employees."
 We are cited by appellant to Vaca v. Sipes, 386 U.S. 171 (1967); Radio Officers Union v. NLRB, 347 U.S. 17 (1953); NuCar Carriers, 76 LRRM 1159 (NLRB 1971). Appellee relies on NLRB v. Local 138, etc., 293 F.2d 197 (2nd Cir.1951); Local 140, Bedding, Curtain, and Drapery Workers, 109 NLRB 326 (1934); and Jandel Furs, 100 NLRB 1390 (1952).
 The gist of the reasoning of all of these cases, taken together, is that, if a union represents one employee in a bargaining unit, it must represent all of them, and that discriminating against non-union employees in a bargaining unit as to benefits otherwise received by union members of the unit is an unfair labor practice.
 With this reasoning, no one has any quarrel. The difficulty here is that the record is in such a state that we are unable to determine, other than from the literal words of the few documents presented to us and such inferences as we can glean from the record as a whole, the exact makeup of the bargaining unit and the past practice of the employer and the union in construing the agreement, especially as to wages and other benefits, as well as contributions.
 The case was decided by the district court on cross motions for summary judgment, without objection by either side, and neither side now objects to such procedure.
 
 
 [2]
 Article III, the Union Security article, provides that a new employee covered by the agreement, who is a member of the union, must retain his membership, and, if not a member, he must join within 8 days. The labor pool, styled "register of applicants for employment," may not include anyone who has not passed a journeyman's examination given by the union
 
 
 [3]
 No question is before us of any construction of the Davis-Bacon Act. The parties rely solely on the construction of the contracts. The Secretary of Labor determines the minimum wage on jobs to which the Davis-Bacon Act applies. 40 U.S.C. Sec. 267a(a)
 
 
 [4]
 It is most noteworthy that the union, according to the literal wording of the agreement, did not bargain for the wages of temporary employees. Article VIII of the collective bargaining agreement sets a minimum wage scale in ascending order for journeymen, chargemen, shopmen, and foremen, obviously grades within the craft. Apprentices' minimum wages are established based on percentages of journeymen's wages. No minimum wage for temporary or other employees is set. It seems, then, on jobs in which the Davis-Bacon Act, or some other condition, would not require minimum wages which are the union scale, the employer may be free to bargain with temporary employees for the wages they are to receive. The record is silent as to the practice of the employer, as well as the union. The record is also silent as to whether or not the employer made the contributions in the past for temporary employees on private construction jobs. We think it is a fair inference, and probably true, that such contributions were not made, and the Davis-Bacon Act requirement to pay the contributions has spawned this litigation
 
 
 [5]
 Employees of the contractor are only one class who may be eligible. Benefits from the trust fund are discretionary in that a Plan of Benefits and Rules of Eligibility are to be set up by the Trustees. Neither the Plan nor the Rules are a part of the record. The only reference to such Plan or Rules is a reference in an affidavit to a regulation of the Painters' Trust Fund as to eligibility for benefits which is discussed later in the opinion. Neither have we been favored by a copy of the union's constitution and bylaws nor by the rules of eligibility to qualify for benefits under the Painters' Pension Fund under Article XI of the agreement or of the Apprenticeship Fund mentioned in Article XIII
 
 
 [6]
 It is striking to note that, for forty-five employees shown in the audit for the second and third calendar quarters of 1969, and because of whose employment this suit is brought, not one could qualify on account of such work for benefits under the Painters' Trust Fund during the third calendar quarter. The audit is not broken down by separate quarters. Even aggregating the hours worked during the entire six month period into one quarter, only three out of the forty-five could possibly qualify